**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **DEYTON MARTINEZ** | **CIVIL ACTION** |
| **VERSUS** | **NO. 12-1458** |
| **N. BURL CAIN** | **SECTION "B"(4)** |

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**. Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. *See* 28 U.S.C. § 2254(e)(2) (2006).[1]

## I.     State Factual and Procedural Background

The petitioner, Deyton Martinez, ("Martinez") is a convicted inmate incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[2] On March 27, 2006, Martinez and a co-defendant, Manuel Salazar, were charged by Bill of Information in Jefferson Parish with the

---

[1]Under 28 U.S.C. § 2254(e)(2), an evidentiary hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2]Rec. Doc. No. 1.

attempted second degree murder and armed robbery of Manuel Carrillo.[3]  Martinez entered a plea

of not guilty to the charge at his arraignment on March 31, 2006.[4]

The record reflects that the victim, Manuel Carrillo, was a local contractor.[5]  Carrillo rented

a house on Ole Miss Drive in Kenner, Louisiana, where he housed his employees.  He did not live

there, but he had an apartment in Metairie.  Carrillo hired the co-defendant, Salazar, as part of his

work crew and Salazar lived in the rental house with the other workers.

In January of 2006, Martinez began working for Carrillo through Salazar.  Martinez worked

with the crew for approximately three days before the stabbing occurred.  On the day of the stabbing,

Carrillo and his crew, which consisted of Martinez, Salazar, and two other men, Ruby and Benny,

had a job working in a high-rise building in the Central Business District of New Orleans remodeling

two stores.  Carrillo testified that he and his men were unable to do the job because his crew did not

bring the necessary towels to work with oil-based paint.  Carrillo was upset and brought the men

back to the rental house where he left them.

Later, after another work call came in around noon, Carrillo returned to the rental house in

his 1999 Chevy Suburban.  On his way there, he called Salazar and told him he was on his way to

pick them up for work.

Carrillo arrived at the rental house and parked in the driveway.  He told Ruby and Benny to

get Salazar and Martinez.  Salazar called out from near the house and told Carrillo, "Come and check

---

[3]St. Rec. Vol. 1 of 6, Bill of Information, 3/27/06.

[4]St. Rec. Vol. 1 of 6, Minute Entry, 3/31/06.

[5]The facts were taken from the published opinion of the Louisiana Fifth Circuit Court of Appeal on direct appeal.  *State v. Martinez*, 38 So.3d 926, 928-30 (La. App. 5th Cir. 2010); St. Rec. Vol. 2 of 6, 5th Cir. Opinion, 09-KA-740, pp. 3-8, 3/23/10.

2

something here.  I mean, what-what can I bring to work." Carrillo told Salazar not to bring anything, but Salazar kept calling for Carrillo to come to him.

Carrillo believed that Salazar was trying to get him to go into the house, although he did not realize it at the time.  Carrillo did not enter the house.  Instead, he stayed near the car and started to take his sweater off over his head.  While he did, he was stabbed from behind five times in the side. Initially, Carrillo thought he was just being hit playfully, and he did not realize that he was being stabbed until he turned around and saw Martinez with the knife.  Carrillo pushed Martinez away, but Martinez charged at him again.  Carrillo grabbed Martinez by the wrist and tried to get the knife away from him.  Carrillo was unsuccessful, and Martinez stabbed him again.  Carrillo and Martinez struggled while rolling around on the ground.  Martinez got up faster and stabbed Carrillo again.

Carrillo did not realize at the time how badly he was hurt.  While still on the ground, Carrillo kicked Martinez, and Martinez fell.  Carrillo tried to get on top of Martinez, but Martinez got up first and stabbed Carrillo in the back.

Carrillo knew Martinez planned to kill him based on the look in his eyes.  Martinez eventually stopped stabbing Carrillo.  Carrillo managed to get up, although he could not recall how he did so.  Martinez also tried unsuccessfully to take Carrillo's wallet.

During the fight, Salazar backed off a little and never helped Carrillo in the fight.  The other two men on the crew told Salazar to pull Martinez off of Carrillo, but Salazar would not do it.  After trying to get Carrillo's wallet, Martinez told Salazar to take the Suburban.  Carrillo saw Martinez and Salazar drive off in his Suburban with Salazar at the wheel.  Carrillo thought he left his keys in the ignition, but Salazar recalled picking the keys up off of the ground.  Carrillo was subsequently taken to the hospital by ambulance.

Carrillo was found to have been stabbed eighteen times in thirteen different locations on his body. Five of the stab wounds were in the same place. Carrillo admitted that he had a prior conviction from September 25, 1990, when he pled guilty to forcible rape and received a sentence of approximately three years at hard labor and ten years on parole or probation, which ended April 6, 2002.

Amber Austin and her mother, Barbara Wilkinson, witnessed the fight with Martinez and Salazar on top of Carrillo. They initially thought Martinez and Salazar were beating Carrillo on the ground. Later, Austin and Wilkinson realized that Carrillo was stabbed when two other men helped Carrillo get up, and they saw that he was soaked in blood. Wilkinson called 9-1-1 and Austin went to the aid of Carrillo. Neither Austin nor Wilkinson saw any weapons around Carrillo. Both Austin and Wilkinson saw Martinez and Salazar flee the scene in a maroon Suburban.

When Lieutenant Nicholas Huth, III, an employee of the City of Kenner, arrived on the scene, he saw that Carrillo had been stabbed multiple times resulting in significant blood loss. Lieutenant Huth did not see a weapon. Carrillo told Lieutenant Huth that Martinez stabbed him and then left in his vehicle. Lieutenant Huth called in the information to police headquarters.

While on route to the scene, Detective Sergeant Cunningham heard the broadcast that Carrillo's vehicle was stolen by Martinez and Salazar. Within minutes of that, Officer Mark Traynham stopped the vehicle with Martinez and Salazar inside. Detective Cunningham proceeded to where the vehicle was stopped.

When he arrived, Martinez and Salazar were being ordered out of the vehicle. Salazar was the driver and Martinez was in the front passenger seat. When Martinez got out of the vehicle,

Detective Cunningham observed that Martinez had bloodstains on his arm and hand, as well as on his shirt, pants, and shoes. He did not see any injuries on Martinez or Salazar.

Austin and Wilkinson were transported to the location where the vehicle was stopped to identify the suspects and the vehicle. Both Austin and Wilkinson identified the two men who stabbed Carrillo, and Wilkinson identified the vehicle. Both Martinez and Salazar were arrested.

On July 12, 2006, Martinez's counsel filed a motion for the appointment of a sanity commission to evaluate Martinez's mental competence to proceed.[6] At a hearing held September 27, 2006, the Court determined that Martinez was not competent to assist at trial based on the doctor's initial findings.[7]

While Martinez was undergoing evaluation and treatment, Salazar entered a plea of guilty to the lesser charges of accessory to attempted second degree murder and accessory to armed robbery.[8] The Trial Court sentenced him to serve five years in prison on each count to run concurrently.[9]

On August 4, 2008, after receiving notice of his ability to understand the proceedings, the Trial Court ordered the sanity commission to send a re-evaluation report about Martinez.[10] At a

---

[6]St. Rec. Vol. 1 of 6, Motion to Appoint Sanity Commission, 7/12/06.

[7]St. Rec. Vol. 1 of 6, Minute Entry, 9/27/06; Order of Commitment, 9/27/06; St. Rec. Vol. 3 of 6, Hearing Transcript, 9/27/06.

[8]St. Rec. Vol. 1 of 6, Plea Minutes (Salazar), 11/7/07; Memorandum of Understanding (Salazar), 10/31/07; Defendant's Acknowledgment of Constitutional Rights and Waiver of Rights on Entry of a Plea of Guilty, 11/7/07.

[9]*Id.*

[10]St. Rec. Vol. 1 of 6, Trial Court Order, 8/4/08.

hearing held August 20, 2008, and after considering the doctor's reports, the Trial Court found Martinez competent to stand trial.[11]

Martinez was tried before a jury on April 28, 2009, and he was found guilty as charged of attempted second degree murder and not guilty of armed robbery.[12] On May 11, 2009, the Trial Court sentenced Martinez to serve forty-nine and one-half years in prison without benefit of parole, probation, or suspension of sentence.[13]

The State also filed that day a multiple bill charging Martinez as a second felony offender.[14] On September 25, 2009, the Trial Court adjudicated Martinez to be a second felony offender and re-sentenced him to serve 99 years in prison without benefit of parole, probation, or suspension of sentence.[15]

On direct appeal from his conviction, Martinez's counsel raised two errors:[16] (1) the evidence was insufficient to support the verdict; and (2) the original sentence was excessive. On March 23, 2010, the Louisiana Fifth Circuit Court of Appeal affirmed Martinez's conviction and the original sentence finding no merit in the claims.[17]

---

[11]St. Rec. Vol. 1 of 6, Hearing Minutes, 8/20/08; St. Rec. Vol. 3 of 6, Competency Hearing Transcript, 8/20/08.

[12]St. Rec. Vol. 1 of 6, Trial Minutes, 4/28/09; Jury Verdict, 4/28/09; St. Rec. Vol. 3 of 6, Trial Transcript, 4/28/09; St. Rec. Vol. 4 of 6, Trial Transcript (continued), 4/28/09.

[13]St. Rec. Vol. 1 of 6, Sentencing Minutes, 5/11/09; St. Rec. Vol. 4 of 6, Sentencing Transcript, 5/11/09.

[14]*Id.*; St. Rec. Vol. 1 of 6, Multiple Bill, 5/11/09.

[15]St. Rec. Vol. 2 of 6, Multiple Bill Sentencing Minutes, 9/25/09; St. Rec. Vol. 5 of 6, Multiple Bill Hearing Transcript, 9/25/09.

[16]St. Rec. Vol. 4 pf 6, Appeal Brief, 09-KA-0740, pp. 6, 9, 9/29/09.

[17]*State v. Martinez*, 38 So.3d at 932, 934; St. Rec. Vol. 2 of 6, 5th Cir. Opinion, 09-KA-740, pp. 11, 14, 3/23/10.

Martinez's counsel filed a second appeal after the multiple bill adjudication in which he raised two errors:[18] (1) the evidence was insufficient to support the verdict; and (2) the habitual offender sentence was excessive. Martinez was granted leave to file a supplemental pro se brief, and the record does not reflect that he ever did.[19] On May 25, 2010, the Louisiana Fifth Circuit refused to reconsider the sufficiency of the evidence issue and affirmed the habitual offender sentence.[20]

Martinez's conviction became final 30 days later, on June 24, 2010, because he did not file for rehearing or seek review in the Louisiana Supreme Court from either of the appellate decisions. *Butler v. Cain*, 533 F.3d 314, 317 (5th Cir. 2008) (appeal is final when the state defendant does not timely proceed to the next available step in an appeal process) (citing *Roberts v. Cockrell*, 319 F.3d 690, 693-94 (5th Cir. 2003)).

On December 6, 2010, Martinez submitted an application for post-conviction relief to the Trial Court in which he raised three grounds for relief:[21] (1) the trial court did not have jurisdiction under La. Code Crim. P. art. 642 through 647; (2) he was denied due process when the Trial Court found him competent to proceed without the benefit of a full, fair, and adequate hearing; and (3) counsel gave ineffective assistance when counsel failed to challenge the competency finding and failed to secure a defense expert.

After receiving a response from the State, on January 27, 2011, the Trial Court denied the application finding that the first two claims were barred from review under La. Code Crim. P. art.

---

[18]St. Rec. Vol. 5 pf 6, Appeal Brief, 09-KA-1057, pp. 6, 9, 1/4/10.

[19]St. Rec. Vol. 5 of 6, Motion for Leave, 09-KA-1057, 2/19/10; 5th Cir. Order, 09-KA-1057, 2/22/10.

[20]*State v. Martinez*, 40 So.3d 1113, 1115, 1117 (La. 2010); St. Rec. Vol. 2 of 6, 5th Cir. Opinion, pp. 3, 6, 09-KA-1057, 5/25/10.

[21]St. Rec. Vol. 2 of 6, Uniform Application for Post-Conviction Relief, 12/8/10 (dated 12/6/10).

930.4(B) and (C), for his failure to raise the issues either pretrial or on direct appeal.[22] Alternatively, the court found the claims to be without merit since a sanity commission was appointed, he underwent psychiatric evaluations, and after a hearing on August 20, 2008, he was found competent. The Court also found that Martinez's ineffective assistance of counsel claim was without merit under the standards set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).

Martinez sought timely[23] review of this order in the Louisiana Fifth Circuit on March 16, 2011.[24] The Court denied the application on April 26, 2011, finding that, on the showing made, they could not find error in the Trial Court's ruling.[25] The Louisiana Supreme Court denied Martinez's related writ application without stated reasons on February 10, 2012.[26]

## II.    Federal Petition

On June 12, 2012, the clerk of this Court filed Martinez's federal petition for habeas corpus relief in which he raised five grounds for relief:[27] (1) the evidence was insufficient to support the verdict; (2) the habitual offender sentence is excessive; (3) the trial court did not have jurisdiction under La. Code Crim. P. art. 642 through 647; (4) he was denied due process when the Trial Court found him competent to proceed without the benefit of a full, fair, and adequate hearing; and (5)

---

[22]St. Rec. Vol. 2 of 6, Trial Court Order, 1/27/11; State's Response, 1/19/11; Trial Court Order, 1/4/11.

[23]The Trial Court allowed Martinez until March 31, 2011 to file a writ application with the Louisiana Fifth Circuit. La. Uniform App. Rule 4-3; St. Rec. Vol. 2 of 6, Trial Court Order, 3/1/11; Notice of Intent, 2/17/11.

[24]St. Rec. Vol. 6 of 6, 5th Cir. Writ Application, 11-KH-303, 3/21/11 (dated 3/16/11).

[25]St. Rec. Vol. 6 of 6, 11-KH-303, 4/26/11.

[26]*State ex rel. Martinez v. State*, 80 So.3d 484, 484 (La. 2012); St. Rec. Vol. 6 of 6, La. S. Ct. Order, 2011-KH-1024, 2/10/12; La. S. Ct. Writ Application, 11-KH-1024, 5/17/11 (dated 5/6/11).

[27]Rec. Doc. No. 1, pp. 43.

counsel gave ineffective assistance when counsel failed to challenge the competency finding and failed to secure a defense expert.

The State filed a response in opposition to Martinez's petition arguing that it was not timely filed and that the claims are not exhausted and/or are in procedural default.[28]

## III.    General Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[29] applies to this petition, which is deemed filed in this Court no later than May 24, 2012.[30]  The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim.  *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The State has raised the defenses of limitations, failure to exhaust, and procedural default. The Court finds that the State's limitations and exhaustion defenses are based on factual error.  First, the state bases both defenses on a clearly erroneous interpretation of the Louisiana Fifth Circuit's

---

[28]Rec. Doc. No. 11.

[29]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996.  *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)).  The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.  *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[30]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se.  Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Spotville v. Cain*, 149 F.3d 374, 376-78 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995).  The clerk of court filed Martinez's federal habeas petition on June 12, 2012, when he was granted pauper status.  Martinez's form petition is not dated but bears a received stamp from the prison Legal Programs Department of May 24, 2012.  This is the earliest date appearing in the record on which he could have delivered the pleadings to prison officials for e-mailing to the Court.

ruling on post-conviction review. The State suggests that the writ was denied on procedural grounds under La. Uniform App. Rule 4-5 for failure to include certain documents. On the contrary, the Court clearly ruled that it could not find error in the Trial Court's ruling since he had not attached the supporting documents:[31]

> Relator failed to attach a copy of his APCR and the State's repsonse as required by Uniform Rules - Court of Appeal, Rule 4-5(C)(8) and (9). Thus, on the showing made, we cannot say the district court erred in denying relator's APCR. Accordingly, the writ is denied.

As outlined above, the writ application otherwise was timely filed and it was denied after review of the substance of his claims, not on a procedural filing error.

Thus, there is no loss of tolling for the pleading filed in the Louisiana Fifth Circuit. The Court also notes that the State never addressed the tolling impact of the subsequent timely filing in the Louisiana Supreme Court. Furthermore, the State's certain misreading of the Louisiana Fifth Circuit's ruling also has lead to its erroneous confusion over the application of the procedural default doctrine and exhaustion. The post-conviction claims were raised to and addressed by each level of the state courts.

As will be further addressed, the state is correct that the state trial court imposed procedural bars under La. Code Crim. P. art. 930.4(B) and (C) upon two of Martinez's post-conviction claims. The state is not correct in its convolution of the point that this procedural bar somehow transformed or was overshadowed by a different procedural bar when it reached the appellate court. The appellate court did not dismiss or refuse Martinez's application for failure to comply with Rule 4-5. On the contrary, the appellate court clearly found no error in the Trial Court's application of the bar under La. Code Crim. P. art. 930.4 on two of the claims or the denial of the merits of the ineffective

---

[31]St. Rec. Vol. 6 of 6, 5th Cir. Order, 11-KH-303, 4/26/11.

assistance of counsel claim based on the showing made.  Thus, the appellate court's approval of the Trial Court's ruling was the last reasoned decision on the issues.  *See Ylst v. Nunnemaker*, 501 U.S. 797, 802 (1991) (when the last state court judgment does not indicate whether it is based on procedural default or the merits of a federal claim, the federal court will presume that the state court has relied upon the same grounds as the last reasoned state court opinion).

Having rejected the State's erroneous limitations and failure to exhaust defenses, the Court will address the properly urged portion of the procedural default defense, and as necessary the merits of Martinez's other claims.

Before doing so, the Court finds that one of Martinez's claims, sufficiency of the evidence, was not substantively exhausted through the state courts.  Under the exhaustion doctrine, *inter alia*, "[a] federal court claim must be the 'substantial equivalent' of one presented to the state courts if it is to satisfy the 'fairly presented' requirement."  *Whitehead v. Johnson*, 157 F.3d 384, 387 (5th Cir. 1998) (citing *Picard v. Connor*, 404 U.S. 270, 275-78 (1971)).  "This requirement is not satisfied if the petitioner presents new legal theories or new factual claims in his federal application." *Whitehead*, 157 F.3d at 387 (citing *Nobles*, 127 F.3d at 420); *see Wilder v. Cockrell*, 274 F.3d 255, 259 (5th Cir. 2001).

As will be discussed, Martinez's counsel challenged the sufficiency of the evidence on direct appeal on the basis that the non-life-threatening stab wounds were not sufficient to prove specific intent to kill.  Martinez now raises an insufficiency of the evidence claim to this federal court arguing that the State failed to prove specific intent because the evidence showed that Carrillo initiated the argument with him and Salazar; therefore, without malice aforethought there was no specific intent

for purposes of attempted second degree murder. The arguments are factually different and therefore do not meet the requirements for exhaustion.

Nevertheless, because relief will not be granted here, the Court will proceed to address the this claim and the merits of the other two claims already exhausted and not in procedural default. 28 U.S.C. § 2254(b)(2).

## IV.    Procedural Default (Claim Nos. 3 and 4)

The State recognizes that Martinez's third and fourth claims, lack of jurisdiction and denial of due process, are in procedural default, having been dismissed by the state courts as procedurally barred from review. Generally, a federal court will not review a question of federal law decided by a state court if the decision of that state court rests on a state law ground that is both independent of the merits of the federal claim and adequate to support that judgment. *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991); *Glover v. Cain*, 128 F.3d 900, 902 (5th Cir. 1997), *cert. denied*, 523 U.S. 1125 (1998); *Amos v. Scott*, 61 F.3d 333, 338 & n.15 (5th Cir. 1995) (citing *Harris v. Reed*, 489 U.S. 255, 260, 262 (1989)). The "independent and adequate state law" doctrine applies to both substantive and procedural grounds and affects federal review of claims that are raised on either direct or post-conviction review. *Coleman*, 501 U.S. at 731-32; *Amos*, 61 F.3d at 338. This type of procedural default will bar federal court review of a federal claim raised in a habeas petition when the last state court to render a judgment in the case has clearly and expressly indicated that its judgment is independent of federal law and rests on a state procedural bar. *Harris*, 489 U.S. at 263; *Glover*, 128 F.3d at 902.

In addressing these two claims on post-conviction review, the Trial Court found each claim to be barred from review under La. Code Crim. P. art. 930.4(B) and (C). Because these bars were

approved by the Louisiana Fifth Circuit and the Louisiana Supreme Court, they stand as the last reason for denial of relief on these issues. *Ylst*, 501 U.S. at 802.

The Court must consider whether the bars to review relied upon by the Louisiana courts prohibit consideration of the claims on federal habeas corpus review. As discussed above, for a state-imposed procedural bar to prevent review by this federal habeas court, the bar must be both independent and adequate.

A. <u>**Independent State Grounds**</u>

A dismissal is independent of federal law when the last state court "clearly and expressly" indicated that its judgment rests on a state procedural bar. *Amos*, 61 F.3d at 338. In this case, Louisiana Fifth Circuit approved the denial of relief based on state statutory rules to bar review of Martinez's claims, citing La. Code Crim. P. art. 930.4(B) and (C). Article 930.4(B) prohibits review of a claim that was known and inexcusable not raised in the proceedings leading to the conviction. Article 930.4(C) similarly prohibits review of a claim that was inexcusably not pursued on direct appeal.

The state courts' rulings were based on Louisiana law setting forth the requirements for preservation and presentation of claims on appellate and post-conviction review. These rulings were therefore independent of federal law and relied strictly on state procedural requirements. *See Bennett v. Whitley*, 41 F.3d 1581, 1583 (5th Cir. 1994) (Art. 930.4); *Washington v. Cain*, 2000 WL 863980, at *4 (E.D. La. June 27, 2000) (Art. 930.4); *see also*, *Harris*, 489 U.S. at 263; *Glover*, 128 F.3d at 902.

### B.  Adequate State Grounds

The question of the adequacy of a state procedural bar is itself a federal question. *Beard v. Kindler*, 558 U.S. 53, __, 130 S.Ct. 612, 617 (2009) (citing *Lee v. Kemna*, 534 U.S. 362, 375 (2002)).  To be adequate, the state procedural rule must be strictly or regularly followed and evenhandedly applied to the majority of similar cases. *Walker v. Martin*, __U.S.__, 131 S.Ct. 1120, 1127-28 (2011); *Glover*, 128 F.3d at 902.  A state procedural rule, however, "can be 'firmly established' and 'regularly followed,' - even if the appropriate exercise of discretion may permit consideration of a federal claim in some cases but not others." *Beard*, 130 S.Ct. at 617-18.

In evaluating the adequacy of the rules applied to bar a petitioner's claim, a federal habeas court does not sit to correct errors made by state courts in interpreting and applying state law. *Narvaiz v. Johnson*, 134 F.3d 688, 695 (5th Cir. 1998) (quoting *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990), and citing *West v. Johnson*, 92 F.3d 1385, 1404 (5th Cir. 1996)); *accord Turner v. Johnson*, 46 F. Supp. 2d 655, 674 (S.D. Tex. 1999).  Rather, a federal court's analysis focuses on due process considerations, and due process requires only that the Court grant the writ when the errors of the state court make the underlying proceeding fundamentally unfair.  *See Neyland v. Blackburn*, 785 F.2d 1283, 1293 (5th Cir. 1986) (citing *McAffee v. Procunier*, 761 F.2d 1124, 1126 (5th Cir. 1985) and *Lane v. Jones*, 626 F.2d 1296 (5th Cir. 1980)).  In keeping with this, a state procedural rule that is applied arbitrarily or in an unexpected manner may be considered inadequate to prevent federal review.  *Martin v. Maxey*, 98 F.3d 844, 847 (5th Cir. 1996); *Prihoda v. McCaughtry*, 910 F.2d 1379, 1383 (7th Cir. 1990).

> A federal court may not second-guess a state court's rule of procedure, but must evaluate whether the rule was actually applicable on the particular facts of the case. Otherwise, state courts could disregard federal rights with impunity simply by using the word "waived."

*United States ex rel. Bradley v. Clark*, No. 99-C-1785, 2002 WL 31133094, at *4 n.2 (N.D. Ill. July 18, 2002).

For this reason, when state courts apply a procedural bar that has no foundation in the record or basis in state law, the federal courts need not honor that bar. *Davis v. Johnson*, No. 00CV684-Y, 2001 WL 611164, at *4 n.10 (N.D. Tex. May 30, 2001); *see also Johnson v. Lensing*, No. 99-0005, 1999 WL 562728, at *4 (E.D. La. July 28, 1999) (Berrigan, J.) (Art. 930.8 bar was not adequate because it was not properly applied under the circumstances of the case); *Poree v. Cain*, No. 97-1546, 1999 WL 518843, at *4 (E.D. La. July 20, 1999) (Mentz, J.) (Art. 930.8 was not adequate to bar review because it was misapplied). It is not, however, within the federal court's province to disagree with the application of the bar; it is only to determine its adequacy. *Lee v. Cain*, No. 03-2626, 2004 WL 2984274, at *1 n.2 (E.D. La. Dec. 6, 2004) (Vance, J.) (addressing Art. 930.3 as applied to ineffective assistance of counsel claim). Thus, where such foundation and basis does exist, as it does in this case, the bar must stand.

As noted above, the state trial court barred Martinez's claims, pursuant to La. Code Crim. P. art. 930.4(B) and (C) for failure to raise the claims in an appropriate manner. In addition, the state court found that Martinez failed to provide a merited excuse for his failure to do so. The record supports the imposition of this procedural bar. Martinez does not and can not contest that these barred claims were not presented in earlier proceedings or on direct appeal when they could have been.

The federal courts have held that the bars imposed under Article 930.4(B) and (C) are adequate to foreclose federal review of a claim barred thereunder by the state courts. *Cf. Thomas v. Cain*, No. 11-02103, 2012 WL 1885088, at *4 (E.D. La. May 23, 2012) (Lemelle, J.) (finding Article

930.4(B) independent and adequate to bar claim challenging expert witness testimony); *Simmons v. Cain*, No. 06-2130, 2008 WL 2185422, at *6 (E.D. La. May 20, 2008) (Berrigan, J.) (finding Article 930.4(B) and (C) independent and adequate to bar trial errors raised on post-conviction that were not raised at trial or on appeal); *Monroe v. Cain*, No. 05-0929, 2006 WL 5507856, at *8 (E.D. La. Oct. 17, 2006) (finding Article 930.4(B) and (C) independent and adequate to bar prosecutorial misconduct claims and others not raised at trial or on appeal), *adopted as modified on other grounds*, *Monroe v. Cain*, No. 05-0929, 2008 WL 818968, at *1 (E.D. La. Mar. 24, 2008) (Berrigan, J.).

For the foregoing reasons, the bars imposed on Martinez's claims of lack of jurisdiction (claim three) and denial of due process (claim four), are supported by the record and are adequate to foreclose review by this federal court. Because the Louisiana courts' decisions rested on independent and adequate state rules of procedural default, this court will not review Martinez's claims unless he established one of the following exceptions.

### C.    <u>Cause and Prejudice</u>

A federal habeas petitioner may be excepted from the procedural default rule only if he can show "cause" for his default and "prejudice attributed thereto," or demonstrate that the federal court's failure to review the defaulted claim will result in a "fundamental miscarriage of justice." *Glover*, 128 F.3d at 902 (citing *Coleman*, 501 U.S. at 731-32); *Amos*, 61 F.3d at 338-39 (citing *Harris*, 489 U.S. at 262; *see Engle v. Isaac*, 456 U.S. 107, 128 & n.33 (1982))

To establish cause for a procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded his efforts to comply with the state's procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). The mere fact that petitioner or his counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not

constitute cause for a procedural default. *Id.* at 486; *see also Martinez v. Ryan*, __ U.S. __, 132 S.Ct. 1309, 1316 (2012) (discussing when counsel's error may be cause to overcome a procedural default) (citing *Coleman*, 501 U.S. at 753, 755).

In this case, Martinez has not offered any cause for the default which would excuse the procedural bar imposed by the Louisiana courts. The Court's review of the record does not support a finding that any factor external to the defense prevented Martinez from raising the claims in a procedurally proper manner. In connection with his claim that counsel's error contributed to the denial of due process during the competency proceeding, as is further discussed in this report, that claim is without merit and does not stand as cause for the default. The record also does not reflect any action or inaction on the part of the State which prevented him from doing so.

"The failure to show 'cause' is fatal to the invocation of the 'cause and prejudice' exception, without regard to whether 'prejudice' is shown." *Hogue v. Johnson*, 131 F.3d 466, 497 (5th Cir. 1997) (citing *Engle*, 456 U.S. at 134 n.43). Having failed to show an objective cause for his default, the court need not determine whether prejudice existed, and petitioner has not alleged any actual prejudice. *Ratcliff v. Estelle*, 597 F.2d 474, 477 (5th Cir. 1979) (citing *Lumpkin v. Ricketts*, 551 F.2d 680, 681-82 (5th Cir. 1977)).

Martinez's defaulted claims are therefore procedurally barred from review by this federal habeas corpus court. *See Trest v. Whitley*, 94 F.3d 1005, 1008 (5th Cir. 1996) (habeas review precluded when petitioner neglected to allege actual prejudice and cause of failure to comply with

state procedural rule concerning time restriction on filing for state post-conviction relief), *vacated on other grounds*, 522 U.S. 87 (1998).[32]

### D.    Fundamental Miscarriage of Justice

Martinez may avoid this procedural bar only if a fundamental miscarriage of justice will occur if the merits of his claim are not reviewed. *Hogue*, 131 F.3d at 497 (citing *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992)). To establish a fundamental miscarriage of justice, petitioner must provide this court with evidence that would support a "colorable showing of factual innocence." *Kuhlmann v. Wilson*, 477 U.S. 436, 454 (1986); *accord Murray*, 477 U.S. at 496; *Glover*, 128 F.3d at 902. To satisfy the factual innocence standard, petitioner must establish a fair probability that, considering all of the evidence now available, the trier of fact would have entertained a reasonable doubt as to the defendant's guilt. *Campos v. Johnson*, 958 F. Supp. 1180, 1195 (W.D. Tex. 1997) (footnote omitted); *Nobles*, 127 F.3d at 423 n.33 (actual innocence factor requires a showing by clear and convincing evidence that "but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense."). When the petitioner has not adequately asserted his actual innocence, his procedural default cannot be excused under the "fundamental miscarriage of justice" exception. *Glover*, 128 F.3d at 903.

Martinez does not present any claim and the record contains nothing to suggest or establish his actual innocence on the underlying conviction. His claims instead address alleged procedural failings in the state criminal proceedings and not his actual innocence. He presents no evidence or argument of the kind of actual innocence that would excuse his procedural default. He, therefore,

---

[32]The Supreme Court vacated the Fifth Circuit's opinion on grounds that a court of appeals is not <u>required</u> to raise the procedural default argument sua sponte. *Id.*

has failed to overcome the procedural bar to his claims. The claims, lack of jurisdiction (claim three) and denial of due process (claim four) are procedurally barred and should be dismissed with prejudice.

## V.   Standards of Review on the Merits of the Remaining Claims

The AEDPA standard of review is governed by § 2254(d) and the Supreme Court's decision in *Williams v. Taylor*, 529 U.S. 362 (2000). It provides different standards for questions of fact, questions of law, and mixed questions of fact and law.

A state court's determinations of questions of fact are presumed correct and the court must give deference to the state court findings unless they were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(2) (2006); *see Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000), *cert. denied*, 532 U.S. 1039 (2001). The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption. 28 U.S.C. § 2254(e)(1) (2006).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1), as amended by the AEDPA. The standard provides that deference be given to the state court's decision unless the decision is "contrary to or involves an unreasonable application of clearly established federal law" as determined by the United States Supreme Court. *Hill*, 210 F.3d at 485.

A state court's decision can be "contrary to" federal law if: (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law; or (2) the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.

*Williams*, 529 U.S. at 405-06, 412-13; *Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Hill*, 210 F.3d at 485. A state court's decision can involve an "unreasonable application" of federal law if it either: (1) correctly identifies the governing rule but then applies it unreasonably to the facts; or (2) extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable. *Williams*, 529 U.S. at 406-08, 413; *Penry*, 532 U.S. at 792.

The Supreme Court in *Williams* did not specifically define "unreasonable" in the context of decisions involving unreasonable applications of federal law. *Penry*. The court, however, noted that an unreasonable application of federal law is different from an incorrect application of federal law. *Id.* "'[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly.'" *Price v. Vincent*, 538 U.S. 634, 641 (2003) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002)) (brackets in original); *Bell v. Cone*, 535 U.S. 685, 699 (2002)).

Thus, under the "unreasonable application" determination, the Court need not determine whether the state court's reasoning is sound, rather "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable." *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002). The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner. *Price*, 538 U.S. at 641 (quoting *Woodford*, 537 U.S. at 24-25); *Wright v. Quarterman*, 470 F.3d 581, 585 (5th Cir. 2006). In addition, review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. *Cullen v. Pinholster*, __ U.S. __, 131 S. Ct. 1388, 1398 (2011).

## VI.  **Sufficiency of the Evidence (Claim No. One)**

Martinez argues that there was insufficient evidence to establish that he had specific intent to kill Carrillo, in spite of the multiple stab wounds.  He claims that, after the argument over their unpreparedness that morning, Carrillo pursued him and Salazar which led to the stabbing, and there was no malice aforethought on his part.

In his first direct appeal, Martinez's counsel argued that the State failed to prove specific intent because the wounds were not severe enough to prove specific intent.  Citing *Jackson v. Virginia*, 433 U.S. 307 (1979), and related state law, the Louisiana Fifth Circuit held that the evidence was sufficient to establish Martinez's intent based on the multiple stab wounds.  Martinez's counsel raised the same issue in the second appeal, and the Louisiana Fifth Circuit refused to reconsider the issue.  Thus, the Louisiana Fifth Circuit's first decision addressing the merits of the claim was the last reasoned opinion on this issue because the Louisiana Supreme Court denied relief without stated reasons.  *See Ylst*, 501 U.S. at 802.

The appropriate standard for determining the sufficiency of evidence is that set forth in *Jackson v. Virginia*, cited by the state appellate court, which requires the Court to determine whether, after viewing the entire record and the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.  *Jackson*, 443 U.S. at 319; *Perez v. Cain*, 529 F.3d 588, 594 (5th Cir. 2008); *Williams v. Cain*, 408 Fed. App'x 817, 821 (5th Cir. 2011).  In addition, "[t]he *Jackson* inquiry 'does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit.'"  *Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001) (quoting *Herrera v. Collins*, 506 U.S. 390, 402 (1993)).  Thus, to determine whether the commission

of a crime is adequately supported by the record, the court must review the substantive elements of the crime as defined by state law. *Perez*, 529 F.3d at 594 (citing *Jackson*, 443 U.S. at 324 n.16).

The court's consideration of the sufficiency of the evidence extends only to what was presented at trial. *See McDaniel v. Brown*, 558 U.S. 120, __, 130 S.Ct. 665, 672-73 (2010) (recognizing that a reviewing court is to consider the trial evidence as a whole under *Jackson*); *Johnson v. Cain*, 347 Fed. App'x. 89, 91 (5th Cir. 2009) (*Jackson* standard relies "upon the record evidence adduced at trial.") (quoting *Jackson*, 443 U.S. at 324). The review of the sufficiency of the evidence, however, does not include review of the weight of the evidence or the credibility of the witnesses, because those determinations are the exclusive province of the jury. *United States v. Young*, 107 Fed. App'x 442, 443 (5th Cir. 2004) (citing *United States v. Garcia*, 995 F.2d 556, 561 (5th Cir. 1993); *see also Jackson*, 443 U.S. at 319 (noting that it is the jury's responsibility "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."). A reviewing federal habeas court, therefore, is not authorized to substitute its interpretation of the evidence or its view of the credibility of witnesses for that of the fact-finder. *Alexander v. McCotter*, 775 F.2d 595, 598 (5th Cir. 1985). All credibility choices and conflicting inferences must be resolved in favor of the verdict. *Ramirez v. Dretke*, 398 F.3d 691, 695 (5th Cir. 2005).

Claims of insufficient evidence present a mixed question of law and fact. *Maes v. Thomas*, 46 F.3d 979, 988 (10th Cir. 1995). The Court must therefore give deference to the state court's findings unless the decision was contrary to, or involved an unreasonable application of *Jackson*. *Gilley v. Collins*, 968 F.2d 465, 467 (5th Cir. 1992) (citing *Schrader v. Whitley*, 904 F.2d 282, 284 (5th Cir. 1990)).

Martinez was charged with and convicted of attempted second degree murder. Louisiana defines "attempt" in La. Rev. Stat. Ann. § 14:27:

> A.     Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.
> B.     (1) Mere preparation to commit a crime shall not be sufficient to constitute an attempt; but lying in wait with a dangerous weapon with the intent to commit a crime, or searching for the intended victim with a dangerous weapon with the intent to commit a crime, shall be sufficient to constitute an attempt to commit the offense intended.
> . . .
> C.     An attempt is a separate but lesser grade of the intended crime; and any person may be convicted of an attempt to commit a crime, although it appears on the trial that the crime intended or attempted was actually perpetrated by such person in pursuance of such attempt.

The underlying crime in Martinez's case was second degree murder, which is defined in relevant part by Louisiana law as "the killing of a human being . . . [w]hen the offender has a specific intent to kill or to inflict great bodily harm." La. Rev. Stat. Ann. § 14:30.1(A)(1). The phrase "specific intent" is defined as the state of mind in which the perpetrator "actively desired the prescribed criminal consequences to follow his act or failure to act." La. Rev. Stat. Ann. § 14:10(1). Under Louisiana law, intent need not be proven directly but may be inferred from the actions of the defendant and the circumstances surrounding those actions. *State v. Sharlhorne*, 554 So.2d 1317, 1321 (La. App. 1st Cir. 1989); *State v. Tate*, 851 So.2d 921, 930 (La. 2003) (citing *State v. Brooks*, 505 So.2d 714, 717 (La. 1987)).

Louisiana law also provides that specific intent to inflict great bodily harm is not alone enough to support a conviction for attempted second degree murder. *State v. Butler*, 322 So.2d 189, 193 (La. 1975); *State v. Collins*, 43 So.3d 244, 251 (La. App. 1st Cir. 2010) ("To be guilty of attempted second degree murder, a defendant must have the specific intent to kill and not merely the

specific intent to inflict great bodily harm."). Specific intent to kill can be implied by the intentional use of a deadly weapon, such as a knife or a gun. *Collins*, 43 So.3d at 251 (citing *State v. Brunet*, 674 So.2d 344, 349 (1996)).

In this case, the jury heard Martinez's testimony in which he painted a picture of an angry and aggressive Carrillo. Martinez testified that Carrillo was angry because the workers, including himself, had not brought all of the rags needed to do the work that morning.[33] He also testified that just prior to the altercation, Carrillo entered the house.[34] While the two of them were alone, Carrillo referred to him as a "bandaho," meaning stupid or an idiot. He also indicated that Carrillo pushed him on the chest and slapped his face.[35] He stated that the verbal insults continued once they were outside. That is when the altercation must have occurred but he did not remember any of it.[36] Martinez did not recall the details, he just claimed to be irritated and wanted to be alone.[37] He did recall getting into Carrillo's car and driving off with Salazar at the wheel.[38]

The jury also heard the testimony of the victim and other eyewitnesses, including the co-defendant Salazar, which set forth a different scenario. Carrillo testified that he picked Salazar, Martinez, and two other men up that morning to do an oil-based paint job in an office building

---

[33]St. Rec. Vol. 4 of 6, Trial Transcript (continued), p. 220, 4/28/09.

[34]*Id*., pp. 221-22.

[35]*Id*., p. 222.

[36]*Id*., pp. 223, 229.

[37]*Id*., p. 224.

[38]*Id*., p. 226.

downtown.[39]  When they arrived, he realized that the men did not bring the box of rags needed to work with the oil paint.  He took them back to the house he provided for them and told them he would be back at noon to take them to another job he expected.[40]  When he received the call for the other job, he contacted Salazar and told him he was coming to the house to pick up the workmen.[41]  Two of the workers were outside when he backed his Suburban into the driveway.[42]  He told them to get Salazar and Martinez.[43]  Salazar came out and kept calling for Carrillo to come and check something but not to bring any tools.  Carrillo later realized Salazar was trying to get him to go inside the house, but he never did.[44]  Before he walked over, Carrillo started to take off his blue-tooth and sweater to leave in the car.[45]  While his arms were over his head to remove his sweater, Martinez attacked him from behind.[46]  He turned and saw the knife.  He then pushed Martinez to try get away, because the car door was opened and in his way.[47]  They struggles and fell to the ground.[48]  Martinez got up faster than Carrillo and continued stabbing him while he was still on the ground.  As they continued to struggle, Salazar backed off and did not help, even though the other two men told him

---

[39]*Id.*, pp. 191-92.

[40]*Id.*

[41]*Id.*, p. 192.

[42]*Id.*, pp. 193-94.

[43]*Id.*, p. 194.

[44]*Id.*

[45]*Id.*, pp. 194-95.

[46]*Id.*, p. 195.

[47]*Id.*, pp. 195-96.

[48]*Id.*, p. 196.

to pull Martinez off of him.  Martinez also pulled at Carrillo's back pocket where he had his wallet. The attack continued as Martinez continued to stab Carrillo in the back and elsewhere, until Martinez suddenly stopped when a van drove by.[49]  At that time, he told Salazar to take the Suburban and they left.[50]  Carrillo suffered multiple wounds, including five in the same location, and a heavy loss of blood.[51]  He was taken to the hospital where his wounds were treated and surgery was performed. He eventually had to have a kidney removed.[52]  Carrillo also denied hitting or cursing at Martinez before the attack.[53]

Amber Austin testified that she saw Martinez and another man fighting with a third man, who was on the ground.[54]  She told her mother and she called 9-1-1.  Martinez and the other man got up and drove off in a maroon Suburban.[55]  At first she thought they had just been fighting until the third man got up soaked in blood.[56]  Two other men who were standing nearby helped him up.[57]  Austin's mother, Barbara Wilkinson, described the incident in the same manner.[58]

---

[49]*Id.*, pp. 197, 200.

[50]*Id.*, p. 197.

[51]*Id.*, pp. 200-02.

[52]*Id.*, p. 202-03.

[53]*Id.*, p. 203.

[54]St. Rec. Vol. 3 of 6, Trial Transcript, pp. 65-66, 4/28/09.

[55]*Id.*, p. 66.

[56]*Id.*, pp. 66-67.

[57]*Id.*, p. 72.

[58]*Id.*, pp. 76, 79, 83.

Salazar testified that Martinez attacked and stabbed Carrillo, and that it was unprovoked.[59] Salazar also denied that he helped Martinez attack Carrillo, although he did enter a plea as an accessory after the fact.[60]  He indicated that he was in the house with Martinez before the incident occurred, but he may have walked out before the other two men.[61]  He did not see Carrillo hit Martinez or do anything to provoke the attack.[62]  Martinez did not tell Salazar what he was about to do, nor did he tell Salazar why he did it.[63]  He also did not attempt to stop Martinez or help Carrillo.[64]

The jury obviously found credible the evidence demonstrating that Martinez without warning attacked Carrillo and stabbed him 18 times, causing extensive bleeding and internal injuries. Martinez used a knife with such force that he caused injuries severe enough to cause an extensive loss of blood and to require surgery.

This evidence was more than sufficient for a reasonable jury to conclude that Martinez acted with specific intent to kill and to support the verdict of attempted second degree murder.  The state courts' denial of relief on Martinez's claim was not contrary to, or an unreasonable application of, Supreme Court precedent.  Martinez is not entitled to relief on this claim.

## VII.    Excessive Sentence (Claim No. Two)

Martinez alleges that his sentence was excessive under the Louisiana Constitution and the Eighth Amendment to the United States Constitution.  He bases this on the argument that Carrillo's

---

[59]St. Rec. Vol. 4 of 6, Trial Transcript (continued), pp. 161-62, 4/28/09.

[60]*Id*., pp. 160-62, 169.

[61]*Id*., pp. 162, 166.

[62]*Id*., pp. 161, 162, 165.

[63]*Id*., p. 162.

[64]*Id*., pp. 166-67.

injuries were not life-threatening, there was no proof of specific intent to kill, and the fight was provoked by Carrillo.

Martinez's counsel challenged his enhanced habitual offender sentence in the second direct appeal to the Louisiana Fifth Circuit. The Court resolved that, recognizing that specific intent was shown by the heinousness of the crime, the Trial Court properly considered the required factors under Louisiana law, including the violence of the crime and the fact that Martinez left Carrillo to bleed to death after inflicting multiple stab wounds for no reason. The Court resolved that the sentence was not excessive and the Trial Court did not abuse its discretion.

First, the state courts' compliance with Louisiana's sentencing laws and the Louisiana Constitution is not the concern of federal habeas review. *Butler v. Cain*, 327 Fed. App'x 455, 457 (5th Cir. 2009). Instead, federal courts accord broad discretion to a state trial court's sentencing decision that falls within statutory limits. *Haynes v. Butler*, 825 F.2d 921, 923-24 (5th Cir. 1987); *Turner v. Cain*, 199 F.3d 437 (5th Cir. 1999) (unpublished) (sentence was within Louisiana statutory limits and within trial court's discretion, therefore petitioner failed to state cognizable habeas claim for excessive sentence).

If a sentence is within the statutory limits, a federal habeas court will not upset the terms of the sentence unless it is shown to be grossly disproportionate to the gravity of the offense. *See Harmelin v. Michigan*, 501 U.S. 957, 993-95 (1991); *Solem v. Helm*, 463 U.S. 277, 290-91 & n.17 (1983). "[W]hen a threshold comparison of the crime committed to the sentence imposed leads to an inference of 'gross disproportionality,'" a court then considers (a) the sentences imposed on other criminals in the same jurisdiction; and (b) the sentences imposed for commission of the same offense

in other jurisdictions. *Smallwood v. Johnson*, 73 F.3d 1343, 1346-47 (5th Cir. 1996); *McGruder v. Puckett*, 954 F.2d 313, 316 (5th Cir. 1992).

If the sentence is not "grossly disproportionate," in the first instance, the inquiry is finished. *United States v. Gonzales*, 121 F.3d 928 (5th Cir.1997), *cert. denied*, 522 U.S. 1063 (1998). As the Supreme Court has noted, outside the context of capital punishment, successful proportionality challenges are "exceedingly rare", and constitutional violations are sustained in only "extreme" or "extraordinary" cases. *Ewing*, 538 U.S. at 23-30 (citations omitted); *Lockyer v. Andrade*, 538 U.S. 63 (2003).

Martinez faced a penalty range for attempted second degree murder of imprisonment at hard labor for not less than ten nor more than fifty years without benefit of parole, probation, or suspension of sentence. La. Rev. Stat. Ann. §§14:27(D)(1)(a), 14:30.1. Under Louisiana's habitual offender laws at the time, as a second offender, Martinez's sentence was to be not less than one-half of the longest term and not more than twice the longest term prescribed for a first offense. La. Rev. Stat. Ann. § 15:529.1. Applying these provisions, Martinez faced a sentencing range as a second offender of not less than 25 years nor more than 100 years in prison. He received a sentence of 99 years in prison, which clearly falls within that range.

As pointed out by the state appellate court, this sentence was actually less than other sentences imposed by Louisiana courts upon a second felony offender convicted of attempted second degree murder where similar sentencing factors were considered. *State v. Hills*, 727 So.2d 1215, 1217-18 (La. App. 4th Cir. 1999) (100 years as second offender for attempted second degree murder involving multiple gunshots to defenseless victim); *State v. Hall*, 606 So.2d 972, 973, 977-78 (La. App. 3d Cir. 1992) (100 years as second offender where court found defendant to have propensity

for violence); *State v. Williams*, 435 So.2d 1047, 1048-49 (La. App. 5th Cir. 1983) (100 years as a second offender where defendant had complete disregard for public safety); *see also State v. Douglas*, 888 So.2d 982, 995 (La. App. 2d Cir. 2004) (100 years as third felony offender whose attack on unwitting victims was predatory in nature).

Martinez has not shown that his sentence was grossly disproportionate or unconstitutionally excessive in light of the crime for which he was convicted. It appears that the sentence was entirely appropriate given the savagery of the attack, its surrounding circumstances and the severe nature of the injuries Martinez inflicted upon Carrillo. The state courts' denial of relief on this issue was not contrary to established Supreme Court case law, nor was it an unreasonable application of Supreme Court precedent. Martinez is not entitled to relief on this claim.

## VIII.   Ineffective Assistance of Counsel (Claim No. Five)

Martinez alleges that his trial counsel provided ineffective assistance because he failed to seek clarification of his competency to proceed, in part because he was intimidated by the biased judge, and because he failed to secure an independent psychiatric expert to assist in preparing to cross-examine the State's psychiatrists.

Martinez raised these arguments in his application for post-conviction relief. The Trial Court denied relief under the standards set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). The Court held that there was no error in counsel's stipulation to the expert reports of the court appointed panel doctors. The Court further resolved that Martinez was not entitled to an independent psychiatric expert and his claim was otherwise conclusory and speculative as there was no evidence that the views of another expert would have changed the outcome of the trial. This was the last reasoned opinion on the issue, because the Louisiana Fifth Circuit and the Louisiana Supreme Court

denied relief without further comment on the merits of the claim. *See Ylst*, 501 U.S. at 802 (when the last state court judgment does not indicate whether it is based on procedural default or the merits of a federal claim, the federal court will presume that the state court has relied upon the same grounds as the last reasoned state court opinion).

The issue of ineffective assistance of counsel is a mixed question of law and fact. *Richards v. Quarterman*, 566 F.3d 553, 561 (5th Cir. 2009). The question is whether the state courts' denial of relief was contrary to, or an unreasonable application of, United States Supreme Court precedent.

The appropriate standard for judging the performance of counsel was established by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). In *Strickland*, the Court established a two-part test for evaluating claims of ineffective assistance of counsel in which the petitioner must prove deficient performance and prejudice therefrom. *See Strickland*, 466 U.S. at 697. The petitioner has the burden of proving ineffective assistance of counsel by a preponderance of the evidence. *Montoya v. Johnson*, 226 F.3d 399, 408 (5th Cir. 2000); *Jernigan v. Collins*, 980 F.2d 292, 296 (5th Cir. 1992). In deciding ineffective assistance claims, a court need not address both prongs of the conjunctive *Strickland* standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test. *Amos v. Scott*, 61 F.3d 333, 348 (5th Cir. 1995).

To prevail on the deficiency prong, petitioner must demonstrate that counsel's conduct failed to meet the constitutional minimum guaranteed by the Sixth Amendment. *See Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001). "The defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687-88. The analysis of counsel's performance must take into account the reasonableness of counsel's actions under prevailing professional norms and in light of all of the circumstances. *See Strickland*, 466 U.S. at

689; *Carty v. Thaler*, 583 F.3d 244, 258 (5th Cir. 2009). The reviewing court must "'judge . . . counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (quoting *Strickland*, 466 U.S. at 690). Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. *Harrington v. Richter*, __ U.S. __, 131 S.Ct. 770, 787 (2011) (citing *Strickland*, 466 U.S. at 689).

In order to prove prejudice, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Williams v. Thaler*, 602 F.3d 291, 310 (5th Cir. 2010). Furthermore, "[t]he petitioner must 'affirmatively prove,' and not just allege, prejudice." *Day v. Quarterman*, 566 F.3d 527, 536 (5th Cir. 2009) (quoting *Strickland*, 466 U.S. at 695). In this context, "a reasonable probability is a probability sufficient to undermine confidence in the outcome." *Cullen*, 131 S.Ct. at 1403 (quoting *Strickland*, 466 U.S. at. 694). This standard requires a "substantial," not just "conceivable," likelihood of a different result. *Harrington*, 131 S.Ct. at 792.

In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." *Crockett v. McCotter*, 796 F.2d 787, 793 (5th Cir. 1986). Thus, conclusory allegations of ineffective assistance of counsel, with no showing of effect on the proceedings, do not raise a constitutional issue sufficient to support federal habeas relief. *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (citing *Ross*, 694 F.2d at 1012).

On habeas review, the United States Supreme Court has clarified that, in applying *Strickland*, "[t]he question is whether an attorney's representation amounted to incompetence under prevailing

professional norms, not whether it deviated from best practices or most common custom." *Harrington*, 131 S.Ct. at 788. The *Harrington* Court went on to recognize the high level of deference owed to a state court's findings under *Strickland* in light of AEDPA standards of review:

> The standards created by *Strickland* and §2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id.* at 788 (citations and quotation marks omitted).

Thus, scrutiny of counsel's performance under § 2254(d) is "doubly deferential." *Cullen*, 131 S.Ct. at 1403 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)). The federal courts must take a "highly deferential" look at counsel's performance under the *Strickland* standard through the "deferential lens of § 2254(d)." *Id.* (citing *Strickland*, 466 U.S. at 689, and quoting *Knowles*, 556 U.S. at 121 n.2).

Martinez alleges, under a broad reading, that his counsel's failure to challenge the commission's report allowed the state trial court to deny him due process required under *Pate v. Robinson*, 383 U.S. 375 (1966), because he did not receive a full hearing on his competence. The law is clear that it is a violation of due process to try and convict a defendant who lacks mental competence. *Cooper v. Oklahoma*, 517 U.S. 348 (1996); *Pate*, 383 U.S. at 375; *Carter v. Johnson*, 131 F.3d 452 (5th Cir. 1997).

The constitutional standard for competency is whether a defendant has "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and "a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402 (1960). A defendant is denied a fair trial where the evidence and circumstances should raise a

reasonable doubt about his competence and the court or counsel fail to make further inquiry. *See*

*Lokos v. Capps*, 625 F.2d 1258, 1261 (5th Cir. 1980).

A finding of competency to stand trial, however, is a fact determination entitled to a presumption of correctness. *Miller v. Fenton*, 474 U.S. 104, 113 (1985). To show that incompetence existed, a petitioner would have to demonstrate to this habeas court facts "'sufficient to positively, unequivocally and clearly generate a real, substantial and legitimate doubt' as to his mental competence at the time of trial." *Dunn v. Johnson*, 162 F.3d 302, 306 (5th Cir. 1998).

Martinez's alleged memory loss was raised as a challenge to his ability to assist counsel. As outlined previously, on July 12, 2006, Martinez's counsel filed a motion for the appointment of a sanity commission to evaluate Martinez's mental competence to proceed and assist in his defense.[65] The motion was based on Martinez's allegation that he suffered with memory problems that may have been organic and that he could not assist counsel if he did not remember the incident and was not malingering.

At a hearing held September 27, 2006, the State and defense counsel stipulated to the reports submitted by the psychiatrist appointed to evaluate Martinez.[66] The parties stipulated that, if called to testify, the doctors would recommend that, "out of an abundance of caution," Martinez be found not competent to proceed at that time and be remanded to the Louisiana Mental Health System Forensic Division for evaluation of possible malingering.[67] Based on the reports and the stipulation,

---

[65]St. Rec. Vol. 1 of 6, Motion to Appoint Sanity Commission, 7/12/06.

[66]St. Rec. Vol. 1 of 6, Minute Entry, 9/27/06; St. Rec. Vol. 3 of 6, Hearing Transcript, p. 5, 9/27/06.

[67]St. Rec. Vol. 3 of 6, Hearing Transcript, p. 5, 9/27/06.

the Court ordered that Martinez was not competent to stand trial and remanded him for further evaluation and treatment.[68]

On August 4, 2008, the Trial Court issued an order indicating that it had been informed by the Superintendent of the Eastern Louisiana Mental Health System, Forensic Division at Jackson, Louisiana, that Martinez was able to understand the proceedings against him and to assist in his defense.[69] Based on that information, the Court reappointed the sanity commission to evaluate Martinez and report back to the Court.[70]

At a hearing held on August 20, 2008, defense counsel indicated that he had been provided with the reports from the Sanity Commission and a packet of records from the forensic hospital.[71] Counsel stipulated that, if the doctor's were present, they would testify consistently with the reports.[72] The State also stipulated to this.[73] The report provided to counsel and the Court indicated the following resolve:[74]

> [T]he most parsimonious explanation for Mr. Martinez's behavior is that he in fact [is] malingering, i.e., there is no objective evidence of any other psychiatric pathology. Absent a mental disorder, Mr. Martinez would then be considered capable of understanding the proceedings and capable of assisting counsel if he so chooses.

---

[68]St. Rec. Vol. 1 of 6, Minute Entry, 9/27/06; Order of Commitment, 9/27/06; St. Rec. Vol. 3 of 6, Hearing Transcript, p. 6, 9/27/06.

[69]St. Rec. Vol. 1 of 6, Trial Court Order, 8/4/08; *see also*, Medical Reports 2008.

[70]*Id.*

[71]St. Rec. Vol. 1 of 6, Hearing Minutes, 8/20/08; St. Rec. Vol. 3 of 6, Competency Hearing Transcript, p. 6, 8/20/08.

[72]St. Rec. Vol. 3 of 6, Competency Hearing Transcript, p. 6, 8/20/08.

[73]*Id.*

[74]St. Rec. Vol. 1 of 6, Sanity Commission Report, 8/6/08.

Based on the doctor's finding that there was nothing wrong with Mr. Martinez, the Court held that Martinez was competent to stand trial.[75]

Contrary to Martinez's suggestions, the record does not indicate that counsel was intimidated by the Trial Court or that the Trial Court was in anyway biased or prejudiced during the proceedings. Martinez has pointed to nothing in the record to prove otherwise.

The record does not reflect that counsel abandoned the competency issue. Instead, the record shows that the reports issued by the doctors and the forensic facility showed a pattern of malingering, or continued misrepresentation by Martinez about his ability to remember his violent outbursts and the violent attack on Carrillo. The record does not establish that there was a true competency issue except that feigned by Martinez.

Martinez has shown nothing to meet his burden of proving error by counsel or a denial of due process. The state trial court's finding of competence was a reasonable determination of the facts in light of the evidence presented to it. *See Hill*, 210 F.3d at 485 (quoting 28 U.S.C. § 2254(d)(2)). Martinez has not overcome the presumption of correctness afforded to this finding.

This fully supported finding by the state trial court left Martinez without a basis to challenge his competence. The expert report reflected and concluded that Martinez did not suffer from any mental disorder which would have affected his ability to assist counsel. Counsel's performance during the competency proceedings was based on his investigation and consideration of the competency reports and forensic records. The decision was in fact reasonably based and was part of a sound decision by counsel.

---

[75]St. Rec. Vol. 1 of 6, Hearing Minutes, 8/20/08; St. Rec. Vol. 3 of 6, Competency Hearing Transcript, p. 7, 8/20/08.

The record also establishes no basis for counsel to pursue the competency question through the assistance of a defense expert and Martinez had no right to such. The law provides that, when requested, an indigent defendant is entitled to funding for psychiatric expert assistance when he "demonstrates to the trial judge that his sanity at the time of the offense is to be a significant factor at trial." *Ake v. Oklahoma*, 470 U.S. 68, 82-83 (1985). However, an indigent defendant does not have an automatic right to expert assistance upon demand. *Yohey v. Collins*, 985 F.2d 222, 227 (5th Cir. 1993). Rather, he must "establish a reasonable probability that the requested experts would have been of assistance to the defense and that denial of such expert assistance resulted in a fundamentally unfair trial." *Id.*; *Griffith v. Quarterman*, 196 Fed. App'x 237, 243 (5th Cir. 2006); *see also Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993) (review of ineffective assistance of counsel claims focus on the question of whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair) (citing *Strickland*, 466 U.S. at 687).

In *Ake*, the Supreme Court explained that "when the State has made the defendant's mental condition relevant to his criminal culpability and to the punishment he might suffer, the assistance of a psychiatrist may well be crucial to the defendant's ability to marshal his defense." *Ake*, 470 U.S. at 80. In this case, the competency report submitted to the state trial court left no room for doubt that Martinez suffered no mental illness. Martinez's counsel had no basis to make a request under *Ake* for further mental evaluation because neither his competence or sanity were truly at issue. *See Dunn*, 162 F.3d at 308 (no constitutional requirement to appoint a psychiatrist under *Ake* where defendant made no preliminary showing that his sanity would be a significant factor at trial).

Martinez has presented nothing to this court, or to the state courts, which would suggest that his mental competence was at issue. His unsupported conjecture does not meet the burden of

showing that counsel was constitutionally ineffective for failure to request an expert. *See Dunn*, 162 F.3d at 306; *accord Lockhart*, 506 U.S. at 372 (citing *Strickland*, 466 U.S. at 687).

Martinez has not established that his counsel's performance was deficient in any way, that his trial was rendered fundamentally unfair by his counsel's performance, or that his counsel's actions prejudiced him. The denial of relief on this claim was not contrary to, or an unreasonable application of, Supreme Court precedent. Martinez is not entitled to relief on this claim.

## IX. Recommendation

For the foregoing reasons, it is **RECOMMENDED** that Deyton Martinez's petition for issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Assoc.*, 79 F.3d 1415, 1430 (5th Cir. 1996).[76]

New Orleans, Louisiana, this 30th day of November, 2012.

_____
**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[76]*Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.